579 A.2d 459

In the Matter of Proceeding by NEW GARDEN TOWNSHIP (Condemnor) for the Condemnation of the Property of Elizabeth Cordivano, Widow, and Joseph B. Cordivano and Nancy P. Cordivano, h/w (Condemnees).

Appeal of Elizabeth CORDIVANO, Joseph B. Cordivano and Nancy P. Cordivano.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 3, 1990.

Decided Aug. 24, 1990.

Howard F. Riley, Jr., Malcolm & Riley, P.C., for appellants.

George A. Brutscher, with him, Clare M. Bartholomew, Brutscher, Brutscher & Foley, for appellee.

Before McGINLEY and SMITH, JJ., BARRY, Senior Judge.

SMITH, Judge.

Elizabeth Cordivano, Joseph B. Cordivano and Nancy P. Cordivano (Appellants) appeal an order of the Court of Common Pleas of Chester County dismissing their preliminary objections and allowing New Garden Township (New Garden) to proceed on its Amended Declaration of Taking pursuant to the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903. The trial court's order is affirmed.

Appellants are the owners of approximately twenty-three acres of land located in New Garden. On February 17, 1988, New Garden filed an Amended Declaration of Taking to condemn this property for the purpose of installing a sewage treatment facility. Appellants filed preliminary objections in which they alleged that prior to the commencement of condemnation proceedings, it was first necessary that New Garden obtain approval from the Agricultural Lands Condemnation Approval Board (Board) pursuant to Section 306 of The Administrative Code of 1929 (Code).[1]

1. The Act of April 9, 1929, P.L. 177, added by Section 1 of the Act of December 7, 1979, P.L. 478, 71 P.S. § 106, created the Board and established its duties and powers.

Following a hearing, the preliminary objections were dismissed and the Appellants have appealed this order.[2]

Appellants raise one issue on appeal: that the trial court holding that New Garden did not require the Board's approval prior to condemnation was erroneous for the reason that the purpose of the condemnation was to construct a solid and liquid waste treatment facility. New Garden contends that the trial court properly found that the Board's approval was not required but erred in finding that the property was currently being used for productive agricultural purposes.

Section 306 of the Code provides in part that:

(b) Before condemning for any of the purposes set forth in subsection (d) any agricultural lands, as classified by the Agricultural Soil Conservation Service of the United States Department of Agriculture, which lands are being used for productive agricultural purposes, but not including the growing of timber, the Commonwealth of Pennsylvania and any of its political subdivisions, agencies or authorities shall request the Agricultural Lands Condemnation Approval Board to determine that there is no reasonable and prudent alternative to the utilization of such lands for the project.

. . . .

(d) The board shall have jurisdiction over condemnation for the following purposes:

(1) Highway purposes, but not including activities relating to the existing highways such as, but not limited to, widening roadways, the elimination of curbs or reconstruction.

2. Appellants' preliminary objections were filed pursuant to Section 406(a)(1) of the Eminent Domain Code, 26 P.S. § 1–406(a)(1), which specifies that timely-filed preliminary objections shall be the exclusive method of challenging the power or right of the condemnor to appropriate the condemned property.

(2) Disposal of solid or liquid waste material, but not including underground pipes used to transport waste. 71 P.S. § 106.

Evidence presented to the trial court indicated that the property was planted with timothy orchard grass and the hay production from the property was used in Appellants' mushroom farming operation. Since 1985, Appellants have obtained two cuttings of hay each growing season, all of which was used for making mushroom compost. New Garden's Township Engineer testified that the proposed sewage treatment facility would be located on a portion of the property not being farmed with mushroom hay and that underground lines would carry raw sewage to the facility, ninety-seven to ninety-eight percent of which would be liquid sewage. Following treatment of the liquid sewage, the treated sewage effluent would be piped out and discharged into the neighboring Red Clay Creek which is not located on the Appellants' property. The proposed plans specify that the remaining two or three percent of the sewage, constituting solid treated waste is to be stored, composted on site, and carried off site for disposal. There was no evidence that any waste, liquid or solid, was to be disposed of on the property and for this reason the trial court determined that Section 306(d)(2) of the Code did not apply.

Appellants contend that the trial court erred in interpreting the words "disposal of solid or liquid waste material" in a manner which was adverse to the term's common usage and which frustrated the express legislative purpose of the Code, which is to protect "prime agricultural land from irreversible conversion for uses that result in its loss as an environmental food production resource." 4 Pa.Code § 7.301. They argue that the trial court judicially substituted the phrase "on site discharge" for disposal.

In his Opinion, the trial judge resorted to Section 1928(b)(6) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(6), which mandates that provisions exempting property from the power of eminent domain are to

be strictly construed. Noting that Section 2 of the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. 1535, *as amended,* 35 P.S. § 750.2, defines "community sewage system" as "any system, whether publicly or privately owned, for the collection of sewage ... and the treatment and/or disposal of the sewage or industrial waste on one or more of the lots or at any other site", the trial court reasoned that the legislature was familiar with the concept of treating sewage as opposed to the concept of disposing of sewage and that the legislature could have used both terms in the Code had it chosen to do so.

It is well-settled that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b); *Wilderness Industries of Maryland, Inc. v. State Board of Motor Vehicle Manufacturers, Dealers and Salesman,* 58 Pa.Commonwealth Ct. 127, 427 A.2d 1235 (1981). This Court must therefore agree with the trial court's analysis, not only because the legislature chose to omit any reference to those facilities where only treatment will take place, but also because of the additional language of Section 306(d)(2) of the Code which excepts from the Board's jurisdiction facilities using underground pipes to transport waste. Presumably, the legislature was referring to underground pipes transporting waste off-site. Had the legislature intended that the Board assume jurisdiction over facilities merely treating sewage, the legislature would have specifically indicated such intent in the Code.[3]

Accordingly, the trial court order is affirmed and this matter is remanded for further proceedings on New Garden's Amended Declaration of Taking.

### ORDER

AND NOW, this 24th day of August, 1990, the order of the Court of Common Pleas of Chester County is affirmed

---

3. Given the ruling herein, this Court need not address New Garden's argument that the trial court erred in finding that the property was currently being used for productive agricultural purposes.

and this matter is remanded for further proceedings on New Garden Township's Amended Declaration of Taking.

Jurisdiction relinquished.