**In re Condemnation by CENTRE TOWN-SHIP MUNICIPAL AUTHORITY, Berks County, Pennsylvania, of a 3.49 Acre Tract of Land Situate in Centre Township Bounded by Railroad Road, Reading Avenue (a 40' Wide Unopened Street), Other Lands of Elwood L. and Ruth C. Ohlinger, and Lands of David and Donna Krepps, Lands of William A. Kissinger (deceased) and Helen M. Kissinger, Muhlenberg Avenue (an Unopened Street) and Reading Blue Mountain and Northern Railroad Company, Lands of Elwood L. Ohlinger and Ruth C. Ohlinger, his Wife, and Unknown Owner or Owners.**

**Elwood L. OHLINGER and Ruth C. Ohlinger, Appellants.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1997.

Decided May 1, 1997.

---

**3.** Claimant was born on January 3, 1928 and retired on January 3, 1989.

Charles F. Fitzpatrick, Reading, for appellant.

Francis M. Mulligan, Reading, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and MIRARCHI, Jr., Senior Judge.

PELLEGRINI, Judge.

Elwood L. Ohlinger and Ruth C. Ohlinger, his wife (Condemnees) appeal from the June 19, 1996 order of the Court of Common Pleas of Berks County (trial court) which overruled their preliminary objection to the trial court's jurisdiction in the instant action.

Condemnees are the owners of a 3.49 acre tract of land (property) which contains two paper streets [1] resulting from a dedication contained in a subdivision plan. On October 25, 1994, the Centre Township Municipal Au-

thority (Condemnor) filed a declaration of taking, condemning in fee simple absolute the property for construction of a sewage treatment plant and a right-of-way to obtain ingress and egress to and from that plant.

Condemnees filed preliminary objections to the declaration of taking in which they alleged that the trial court did not have subject matter jurisdiction over the action since, pursuant to Section 306 of the Administrative Code (Code),[2] Condemnor was first required to request that the Agricultural Lands Condemnation Approval Board (Agricultural Board) determine that there is no reasonable and prudent alternative for the project. Section 306 of the Code provides in relevant part:

(a) The Agricultural Lands Condemnation Approval Board is hereby created as an independent administrative board . . .

(b) Before condemning for any of the purposes set forth in subsection (d) any agricultural lands, as classified by the Agricultural Soil Conservation Service of the United States Department of Agriculture, which lands are being used for productive agricultural purposes, but not including the growing of timber, the Commonwealth of Pennsylvania and any of its political subdivisions, agencies or authorities shall request the Agricultural Lands Condemnation Approval Board to determine that there is no reasonable and prudent alternative to the utilization of such lands for the project.

. . .

(d) The board shall have jurisdiction over condemnation for the following purposes:

(1) *Highway purposes*, but not including activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curbs or reconstruction.

---

1. "Paper streets" are streets which appear on the plan or zoning map of a municipality or on other publicly recorded documents such as subdivision plans or tax maps. Where such a street has never been opened by the municipality or used by the public, it has no existence except on paper, and is, therefore, referred to as a "paper street." *Tobin v. Radnor Township Board of*

*Commissioners*, 142 Pa.Cmwlth. 567, 597 A.2d 1258 (1991).

2. Act of April 9, 1929, P.L. 177, added by Section 1 of the Act of December 7, 1979, P.L. 478, 71 P.S. § 106.

**1014**

(2) *Disposal* of solid or liquid waste material, but not including underground pipes used to transport waste. (emphasis added).

Condemnees contend that since Condemnor's alleged purpose as set forth in the declaration of taking included the ultimate disposal of sanitary sewage and public access to a road, the Agricultural Board, not the trial court, at least initially, had jurisdiction over whether the Condemnor could take the property.[3]

■ As to the issue of whether disposal of solid or liquid waste was within the jurisdiction of the Agricultural Board, the trial court, relying on *In the Matter of New Garden Township*, 134 Pa.Cmwlth. 531, 579 A.2d 459 (1990), held that condemnation of land for construction of a sewage treatment plant does not mean it constitutes a taking for a sewage disposal facility. The trial court also held that the Agricultural Board had no jurisdiction over the condemnation because it was not for a "highway purpose" but was merely a right-of-way to and from the sewage treatment plant. Accordingly, it overruled Condemnees' preliminary objection. This appeal followed,[4] in which Condemnees raise the same contentions.

■ The Condemnees initially contend that the trial court erred in relying on *New Garden, supra,* for the proposition that condemnation for the purpose of sewage treatment need not be submitted to the Agricultural Board for approval because *New Garden* is distinguishable. In *New Garden,* New Garden Township, as here, filed a declaration of taking to condemn 23 acres of land owned by condemnees for the purpose of installing a sewage treatment facility. The condemnees filed preliminary objections contending that before condemnation proceedings could commence, the Township first was required to obtain approval of the Agricultural Board, pursuant to Section 306 of the Code, since the purpose of the condemnation was to construct a solid and liquid waste facility.

In rejecting that contention, we looked to other provisions of Pennsylvania law which interpret or define sewage—specifically Section 2 of the Pennsylvania Sewage Facilities Act[5]—and held that since that Act referred to both treatment and disposal of sewage, the legislature was familiar with the concept of treating sewage as opposed to disposing of sewage. Because it chose to omit any reference to those facilities where only treatment would take place, we concluded that Section 306 did not apply and the Agricultural Board had no jurisdiction.

Condemnees contend this matter is distinguishable because in *New Garden,* there was evidence that the treated sewage was being piped to a neighboring creek that was not located on the condemnees' property, and the record here does not indicate that Condemnor will provide for separate disposal. According to Condemnees, since treatment and disposal may both take place on the property, the condemnation for "treatment" may also include "disposal," so that the Agricultural Board, not the trial court, has jurisdiction over the matter.

Condemnees and Condemnor, however, entered into a stipulation by which they agreed that the property was "condemned in part for a sewerage treatment plant to be constructed and operated under Pennsylvania DEP standards." Moreover, Condemnees have produced no evidence that Condemnor intends to use the property for disposal. Since the declaration of taking, stipulation

3. In their preliminary objections, Condemnees also contended that Condemnor had posted inadequate security. The trial court sustained that preliminary objection, ordering that since the bond posted by Condemnor at the time did not provide sufficient security for Condemnor's acquisition of the property, Condemnor had no later than 60 days from the date of its order to post sufficient security. Because Condemnor has since complied with that order and posted sufficient security, that issue is not before us on appeal.

4. Our scope of review of a trial court's order overruling Appellants' preliminary objections is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Olson v. Whitpain Township,* 141 Pa. Cmwlth. 270, 595 A.2d 706 (1991).

5. Act of January 24, 1966, P.L. (1965), 1535, *as amended,* 35 P.S. § 750.2.

and briefs of Condemnor all indicate that the property is to be used for treatment only, the bare assertion of Condemnees that the property could be used for both purposes is not sufficient to bring the use within the scope of Section 306.[6]

 Regardless of whether the purpose of condemnation is for sewage treatment or disposal, Condemnees contend that the Agricultural Board nonetheless has jurisdiction, since approval is required for "highway purposes" and because Condemnor is acquiring a "right-of-way." What Condemnees fail to point out is that by the stipulation, they agreed with Condemnor that "[a] right-of-way and not a highway is needed to access Railroad Road as set forth in the Declaration of Taking. The purpose of the right-of-way is to access the sewage treatment plant." 67 Pa.Code § 445.2 defines the term "highway" as "[a] public right-of-way improved primarily for vehicles. Unimproved rights-of-way, private roads and drives are not to be recognized as highways, roads or streets." Because the purpose of the right-of-way, as stipulated to by both parties, is to access the sewage treatment plant, the right-of-way at issue here does not meet the definition of "highway" as set forth by the regulations and need not be submitted to the Agricultural Board for approval.[7]

Because Section 306 of the Code does not apply and the matter need not be initially submitted to the Agricultural Board for approval, the order of the trial court is affirmed.

### ORDER

AND NOW, this 1st day of May, 1997, the order of the Court of Common Pleas of Berks County, No. 5644–94 A.D., dated June 19, 1996, is affirmed.

---

6. Although Condemnees admit that their land is not located in an agricultural security area, they contend that the Agricultural Area Security Law, Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. § 913, which requires Board approval for both sewage disposal and treatment, is at least instructive. Because we have held that *New Garden* controls, and because the property is admittedly not in an agricultural security area, this argument need not be considered.

7. The Condemnees also allege that because owners of property within the subdivision plan on which the paper streets are located retain private rights of easement by implication over unopened streets, *Estojak v. Mazsa*, 522 Pa. 353, 562 A.2d 271 (1989), the condemnation must first be submitted to the Agricultural Board for approval, since a public right to access is involved. We still disagree that this matter must first be submitted to the Agricultural Board for approval, because all Condemnor is doing is acquiring Condemnees' right to access, and the rights of the public with regard to the paper streets are not implicated.